J-A29028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| K.A.T., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| H.L.T., | |
| Appellee | No. 392 WDA 2014 |

Appeal from the Order entered February 5, 2014,
in the Court of Common Pleas of Westmoreland County,
Civil Division, at No(s): No. 19 of 2014-D

BEFORE:  FORD ELLIOTT, P.J.E., ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED NOVEMBER 13, 2014**

K.A.T. ("Father") appeals from the February 5, 2014 order regarding his petition filed pursuant to the Protection From Abuse Act, ("PFAA"), 23 Pa.C.S.A. § 6101 *et seq.*, which dismissed a temporary Protection From Abuse ("PFA") order dated January 6, 2014.  We affirm.

The trial court summarized the pertinent facts and procedural history as follows:

> On January 3, 2014, Father filed a Petition for a PFA Order on behalf of [his son, C.T., ("Child") and against Mother]. In the PFA Petition, Father alleged that on January 1, 2014 at 8:30 p.m.:
>
> > [Child] was riding in the back seat (driver's side) of maternal grandmother's SUV.  Mother was in [the] front passenger seat.  Mother has been threatening

*Retired Senior Judge assigned to Superior Court.

[Child] with placement in a mental hospital or juvenile detention and had previously attempted same. Fearful, [Child] [illegible] until the next stop light. Once stopped and seeing no cars, he attempted to exit the vehicle. Once he was half way out of the vehicle, Mother [] grabbed [Child's] right leg and [illegible] to Maternal Grandmother, "Go Go Go he's getting away." Maternal Grandmother hit the gas. After about 15 [feet,] and with [Child] now more than ½ way out of the vehicle, Maternal Grandmother hits the brakes while yelling, "He's gonna get hurt[.]" The force caused [Child's] jeans to rip from the waist to the knee. [The Child] ran from the vehicle and his next [sic] to a nearby shed. [Child] called Father [] on his cell phone. Father went and picked him up. Neshannock Twp[.] Police had been called and went to Father's house. They declined to take a statement from [Child].

(Father's PFA Petition, Section 10, pg. 3). In the prior abuse section, Father alleged the following, "[Mother] has said she will place [Child] in foster care, a mental hospital, juvenile detention. Has been thrown [Child] [sic] by [M]other, [illegible] verbal abuse—stupid." (Father's PFA Petition, Section 11, pg. 3). On that day, Father was granted an emergency PFA by the Honorable Magisterial District Judge Jason Buczak.

On January 6, 2014, after conducting an *ex parte* Temporary PFA hearing, this [trial c]ourt granted Father's Temporary PFA on behalf of Child and scheduled a Final PFA Hearing for January 21, 2014. Thereafter, Mother filed a Motion to Continue the Final PFA Hearing and to Set Motion to Dismiss Petition and to Vacate Temporary PFA Order. By Order [entered] on January 21, 2014, this Court rescheduled the Final PFA Hearing to February 5, 2014, due to the unavailability of [Mother's] counsel, and ordered that the Temporary PFA remain in effect until the rescheduled hearing.

At the commencement of the Final PFA Hearing on February 5, 2014, Mother's counsel motioned to dismiss or vacate the Temporary PFA on the ground that Father did not comply with the requirement of reporting (in the PFA Petition) that a current custody order was in effect and on

the ground of improper venue. After argument by both parties' counsel, this Court denied both motions. After conducting the Final PFA Hearing, this Court found that Mother's testimony was credible, that Mother's explanation of what occurred on January 1, 2014 was reasonable and that Child's testimony, inasmuch as Child alleged that he was "fearful" of Mother, was not credible. This Court then dismissed the PFA Petition for insufficient evidence under 23 Pa.C.S.A. § 6101 et seq. On March 4, 2014, Father filed timely notice of appeal.

Trial Court Opinion, 4/25/14, at 2-3. Both Father and the trial court have complied with Pa.R.A.P. 1925.[1]

Father raises the following issues on appeal:

A. Was it error for the [Trial Court] to deny [F]ather's request for relief under the [PFAA] where [Child's] testimony demonstrated his fear of serious bodily injury including [M]other's past threats to kill [Child] in light of [M]other's explanation of events as being reasonable?

B. Was it error by the [Trial] Court to deny relief under the [PFAA] for [Child] because of pending custody litigation in another county?

Father's Brief at 5.

_____

[1] Subsequently, Father filed a motion for reconsideration, asserting that the trial court had not afforded him the opportunity to present rebuttal testimony. The trial court granted Father a hearing, and, upon hearing the evidence, reaffirmed its February 5, 2014 order denying Father's PFA petition. Because Father filed this motion beyond the thirty-day appeal period, the trial court did not have jurisdiction to consider it. *See generally*, Pa.R.A.P. 1701(b)(3). We do not consider the trial court's factual findings and legal conclusions regarding the evidence presented in support of the motion. Nevertheless, we note the trial court's statement that the evidence received "actually solidified [its] opinion regarding Child's motivations." Trial Court Opinion, 4/25/14, at 6.

Although Father presents two issues for review, he has not provided separate arguments to support each one. *See* Pa.R.A.P. 2119(a). Mother cites this shortcoming, as well as other purported defects, and argues that we should find Father's arguments to be waived. Mother's Brief at 2. Because appellate review has not been hampered, we decline to do so. *See generally*, *Commonwealth v. Melvin*, 548 A.2d 275 (Pa. Super. 1988). However, as both issues challenge the trial court's finding of insufficient evidence to support the granting of Father's PFA petition, we address the issues together.

"We review the propriety of a PFA order for an abuse of discretion or an error of law." *Ferko-Fox v. Fox*, 68 A.3d 917, 920 (Pa. Super. 2013). According to the PFAA, the trial court "may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the [petitioner] or minor children." 23 Pa.C.S.A. § 6108(a). The PFAA defines "abuse," in pertinent part, as follows:

> "**Abuse.**" The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly, or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S.A. § 6102. "Actual physical harm is not a prerequisite for the entry of a PFA order, the victim need only be in reasonable fear of imminent serious bodily injury." ***Thompson v. Thompson,*** 963 A.2d 474, 477 (Pa. Super. 2008) (*citing* ***Fonner v. Fonner***, 731 A.2d 160, 163 (Pa. Super. 1999)).

In support of its finding that the evidence presented by Father was insufficient to establish "abuse" under the PFAA, the trial court explained:

> This Court had the opportunity to hear from and observe Child and Father on three occasions and Mother on two occasions.
>
> ***
>
> The record reflects multiple previous PFA's and contentious protracted custody litigation in Lawrence County. Child's allegations over the years, as detailed above, have been litigated in another county and no findings have been made in support of those allegations.
>
> In fact, after observing Child during his testimony and in the presence of Father, this Court is concerned regarding Child's extremely deliberate and calculated testimony as well as Child's obvious alignment with Father. Child did not show emotion under the circumstances and made it clear that he wanted to be with [Father]. By his conduct and demeanor, both in Court and out, it appears to this Court that Child was operating under a clear agenda to manipulate the [existing] Custody Order.
>
> ***
>
> Regarding Child's allegations of Mother's threats to kill Child, Child testified that Mother made the threats sometime after the Lawrence County custody Order was entered in October of 2013. This Court takes these allegations very seriously. However, having had the opportunity to hear from and observe Child in the presence of both parents on multiple occasions, this Court finds that

the Child was not fearful of imminent serious bodily injury. This Court finds that Child's testimony, that he is "fearful" of Mother, is not credible. Therefore, it is not necessary for this Court to determine whether the alleged "fearfulness" of Mother is reasonable.

However, even if the Court had found that [Child] was fearful of Mother, based upon the record and the testimony of all parties, this Court finds that Child's alleged "fearfulness" of Mother was not reasonable. The parties testified that, on January 1, 2014, it was dark and cold; there was snow on the ground, and the incident occurred at a dangerous intersection in the road. Hearing Child's seatbelt unbuckle and being concerned that Child would run from the vehicle as he had done on many occasions, Mother reached around and grabbed Child's pant leg. Nevertheless, Child attempted to exit the vehicle at this intersection. While Mother may not have used her best judgment in telling Maternal Grandmother to drive through the red light, Mother believed, in her panic, that Child would not exit the vehicle if the vehicle was moving. Child provided no testimony that Mother's actions before or during the incident on January 1, 2014, caused Child to be fearful of imminent serious bodily injury. On that day, rather Child testified that, ". . . I wanted to jump out of the car because I wanted to get away from [Mother]."

\*\*\*

[F]ather has not met [his] burden by a preponderance of the evidence. Father has shown that Child does not wish to be with Mother during Mother's court ordered periods of [primary] physical custody. However, Child's desire to be with Father is a custody matter and not properly before this Court on a PFA Petition.

Trial Court Opinion, 4/25/14, at 4-7 (citations and footnotes omitted).

Our review of the final PFA hearing transcripts supports the trial court's determination that Father did not meet his evidentiary burden. At the conclusion of the hearing, the trial court stated: "I find that [Mother's] testimony as to what occurred that night, after hearing it from [Child], I

think her explanation is reasonable and it's credible." N.T., 2/5/14, at 101. As noted above, issues of credibility are for the trial court, and cannot be disturbed on appeal. **Ferko-Fox**, **supra**.

Father's claims of error are unavailing. Father first claims that Child's "testimony as to his fear was uncontradicted [and] Mother's intentions or explanation regarding [Child's] fear is irrelevant." Father's Brief at 10. Clearly, Child is the only person who could explain his state of mind during the January incident. This fact, however, does not alter the trial court's conclusion that Child was not credible. For this same reason, we reject as untenable Father's assertion that, by denying Mother's motion to dismiss made following the conclusion of his case, the trial court "obviously had determined that [Child's] fear of imminent serious bodily injury was justified based upon the events of January 1, 2014, and past threats as recounted by him." Father's Brief at 10. Finally, although the trial court did refer to the parties' "protracted custody dispute," N.T., 2/5/14, at 101, it was Child's lack of credibility, rather than any custody issue, upon which the trial court found insufficient evidence of parental abuse.

In sum, because our review of the record supports the trial court's determination that Father did not establish, by a preponderance of the evidence, that Mother's conduct toward Child constituted "abuse" as defined by the PFAA, we affirm its order denying relief. **Compare**, **e.g.**, **Thompson**, 963 A.2d at 478 (affirming trial court's determination that sufficient evidence of abuse supported granting of PFA petition against

Father given testimony of the parties' two sons); ***B.T.W. ex rel. T.L. v. P.J.L.***, 956 A.2d 1014, 1016-17 (Pa. Super. 2008) (concluding that stepmother's conduct constituted abuse as defined by the PFAA, rather than permissible corporal punishment for misbehavior).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2014