484 A.2d 793

**COMMONWEALTH of Pennsylvania**

v.

**John SWARTZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 24, 1984.

Filed Nov. 16, 1984.

Petition for Allowance of Appeal Denied May 7, 1985.

---

H. Stanley Rebert, York, for appellant.

Floyd P. Jones, Assistant District Attorney, York, for Commonwealth, appellee.

Before SPAETH, President Judge, and CIRILLO and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the judgment of sentence imposed upon appellant's non-jury conviction for robbery and theft. Appellant raises three contentions on appeal: 1) was the verdict contrary to the evidence, weight of the evidence and to the law; 2) did the court err in refusing to hear his proffered evidence as to diminished capacity; and 3) was the sentence excessive? We affirm.

■ We must first dispose of appellant's sufficiency claim, since if the evidence was insufficient as a matter of law then he would be entitled to be discharged.[1] *See Commonwealth v. Poindexter*, 484 Pa. 472, 399 A.2d 390 (1979). The uncontested and unimpeached evidence established the following facts. Appellant walked into a branch office of York Bank and Trust. He was wearing reflective sun glasses. Appellant went up to a teller, handed her a paper bag, and said "Fill the bag." He further said "Quick" and when the teller did so slowly, he told her "Faster." After an amount of money had been placed in the bag, appellant grabbed the bag and then departed. The teller stated she was "very scared" and frightened. Appellant never claimed to be armed, never *expressly* threatened the teller, and was not observed with a weapon or even his hand in his pocket.

---

**1.** Should a court find that a verdict is against the weight of the evidence then a new trial may be awarded. *Commonwealth v. Laing,* 310 Pa.Superior Ct. 105, 456 A.2d 204 (1983).

At trial appellant agreed with the above recitation but indicated he had not intended to frighten the teller. Furthermore, had she refused to give him the money, he claimed he would have left the bank without incident. Appellant's defense consisted of admitting the theft, but denying that he had threatened or intentionally placed the teller in fear of immediate bodily injury.

Appellant was convicted under 18 Pa.C.S.A. § 3701(a)(1)(iv), which reads:

**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

\*       \*       \*       \*       \*       \*

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; ....

In the current case we must determine whether appellant's intent was adequately demonstrated when there was no actual threat or display of force but only a demand for money. While this precise issue has not been addressed before, similar situations have arisen under § 3701(a)(1)(ii).[2]

In *Commonwealth v. Hurd,* 268 Pa.Superior Ct. 24, 407 A.2d 418 (1979) this court held that an actor's request to open a drawer, which was repeated in the following manner: "Bitch, open the drawer," while the actor appeared to have his hand, on an object in his pocket was sufficient to show that the actor intended to place the victim in fear of "immediate serious bodily injury." *Hurd* may appear to be a stronger case than the one currently before us, as there the defendant's action suggested he had a gun. However, more similar to the current controversy is *Commonwealth v. Davis,* 313 Pa.Superior Ct. 355, 459 A.2d 1267 (1983). The defendant in *Davis* was convicted under § 3701(a)(1)(ii) of robbing a pipe store which was open all night. He was observed entering the shop through a small window

---

**2.** That section reads:

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; ....

through which business was transacted. The defendant told an employee of the shop to: "Get back, Get back." This court held that Davis' "mode of entry and his warnings ... certainly were aggressive actions which implicitly carried with them a threat of imminent bodily harm ...." When applied to the facts at hand, *Davis* requires that we find that the current evidence showed beyond a reasonable doubt that appellant, contrary to his claim, intended to put the teller in fear. A sun-glassed individual, who approaches a bank teller with a paper bag and commands that the bag be filled with currency and exhibits extreme impatience with a teller creating an atmosphere of extreme tension, can be reasonably presumed to intend to inflict fear into the mind of the teller within the meaning of § 3701(a)(1)(iv).[3]

In his second contention, appellant argues that the trial court erred in prohibiting him from presenting a diminished capacity defense to negate the specific intent required for his conviction of robbery. The trial court held that such defense was only available in first degree murder prosecutions. The trial court, acknowledging the novelty of the problem relied upon the Subcommittee Note to Pennsylvania's Suggested Standard Jury Instruction 5.01B[4] to support its position.

3. We see little need to address the challenge to the weight of the evidence. The only area of contention was appellant's intent. Clearly, the trial court discounted appellant's testimony. We can not find that such finding was so contrary to the evidence as to shock one's sense of justice. *See Laing, supra.*

4. That comment reads:

The instruction recommended above implements *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976). *Walzack* held that psychiatric evidence is admissible to negate the element of specific intent required for first degree murder. The court expressly overruled the contrary holdings of a line of prior cases including *Commonwealth v. Weinstein,* 442 Pa. 70, 274 A.2d 182 (1971) and *Commonwealth v. Ahearn,* 421 Pa. 311, 218 A.2d 561 (1966). The court labelled the doctrine which it recognized in *Walzack* "diminished capacity" since it relates to the accused's ability to perform a specific cognitive process, *see Walzack, supra* at n.6.

The court left open the question of whether the doctrine of diminished capacity should apply to other specific *mens rea* crimes. In the opinion of the subcommittee it should not. First degree murder is unique both in terms of the severity of the penalty and the quality and intensity of the intent required by the legislative definition. Compare, for example, the "intent to deprive" required

All of the Supreme Court's past pronouncements on the doctrine of diminished capacity have been made in the context of premeditated murder cases. However, general language in *Commonwealth v. Walzack*, 468 Pa. 210, 221, 360 A.2d 914, 919 (1976), where the court said: "The thrust of the doctrine is to challenge the capacity of the actor to possess a particular state of mind required by the legislative for the commission of a certain degree of the crime charged", seems to imply the defense is available to other crimes. Similarly, in *Commonwealth v. Brantner*, 486 Pa. 518, 523, 406 A.2d 1011, 1014 (1979), the court stated: "Appellant is correct in noting that this jurisdiction recognizes diminished mental capacity as a defense to a charge requiring a specific intent." As the court in both of the above cases did not limit it's language to homicide situations, it would appear to be a reasonable inference that diminished capacity may be applicable to other crimes.

Additional support for the above conclusion can be gathered from the historical development of the defense of intoxication. In *Commonwealth v. Santiago*, 489 Pa. 527, 414 A.2d 1016 (1980); and *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975) [5], our Supreme Court held that evidence of intoxication could be used to negate the specific intent required to commit other specific intent crimes and in particular the crime of robbery. But for the intervention of the legislature in enacting a statutory prohibition as to the use of voluntary intoxication as a defense to crimes other than murder of the first degree, such a defense would be available in robbery prosecutions. See 18 Pa.C.S.A. § 308 [6],

for theft under Crimes Code § 3921 with the willful, deliberate and premeditated intent to kill required for first degree murder. A person who could not form an "intent to deprive" would probably qualify for the complete insanity defense and would have no need for the diminished capacity doctrine. Applying the type of analysis used in *Walzack* it would appear that when the crime charged is not first degree murder, the probative value of psychiatric evidence of diminished capacity would be outweighed by dangers of unduly complicating the issues, confusing the jury and prolonging the trial.

5. Affirmed after remand at 484 Pa. 29, 398 A.2d 644 (1979).
6. Santiago was tried prior to the effective date.

at least until the recent Supreme Court's decision in *Commonwealth v. Garcia*, 505 Pa. 304, 479 A.2d 473 (1984). As the legislature has not expressed its disapproval of the use of the diminished capacity in contrast to involuntary intoxication defense in situations other than premeditated murder, it could be argued that such defense is not so limited.

Our Supreme Court was faced in *Commonwealth v. Garcia*, with the specific issue of whether diminished capacity may be applied to crimes other than murder of the first degree. There the defendant raised diminished capacity as a defense to both felony murder and robbery. He argued that he was incapable of forming the intent to steal from the victim and hence he could not be held liable for robbery and similarly, could not be culpable of felony murder. Mr. Justice Hutchinson, writing for the majority, noted that the doctrine of diminished capacity has "to date" only been applied to first degree murder. *See Commonwealth v. Terry*, 501 Pa. 626, 462 A.2d 676 (1983); *Commonwealth v. Weinstein*, 499 Pa. 106, 451 A.2d 1344 (1982); *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976). He then went on to hold that:

> Proper *psychiatric* testimony is admissible only to negate the specific intent required to establish first degree murder. *See Commonwealth v. Weinstein, supra.* Therefore, the determination of whether *Garcia* ever formed an intent to rob, and if so, when he formed such intent, was required to be made on the basis of the factual circumstances surrounding the criminal episode as developed by demonstrative evidence and testimony other than psychiatric expert testimony.

505 Pa. at 311, 479 A.2d at 477 (footnote omitted but discussed infra.)

Had the court concluded its discussion with the above holding, there would have been little reason here for us to discuss the issue further. However, in footnote three, (on 505 Pa. page 311, 479 A.2d page 477) the court acknowledges that the issue of whether "diminished capacity" is applicable to robbery was not open to Garcia since he

admitted the theft, thereby admitting "precisely the same 'specific' intent" required for robbery. Therefore, it would appear that the court's holding, as it pertains to the current controversy, is advisory.

Unlike the Supreme Court in *Garcia*, we must address appellant's claim. In light of *Garcia* any of the inferences which are suggested above by *Walzack, Brantner, Santiago* and *Graves*,[7] appear to be contrary to the reasoning of the *Garcia* majority. Accordingly, even though the discussion of diminished capacity may have been unnecessary to the resolution of *Garcia*, it clearly expresses the majority's view and therefore should be followed. Hence, in the current appeal we can not find error in the trial court's refusal to hear and consider appellant's proffered psychiatric evidence.

Judgment of sentence affirmed.[8]

SPAETH, President Judge, concurs in the result.

**7.** The *Garcia* majority would interpret the same historical analysis concerning the intoxication defense as indicating the legislature would disprove extending diminished capacity beyond first degree murder. See 505 Pa. at 311 n. 3, 479 A.2d at 477 n. 3.

**8.** Appellant was sentenced to a term of incarceration of 6 to 23 months and his petition for reconsideration was denied. On appeal appellant argues in light of his mental state the sentence was excessive. After reviewing the record we find no relief to be warranted in this respect.