**Commonwealth of Pennsylvania v. Gadsden**

C.P. of Monroe County, no. 683 Criminal 2002.

*Michael Mancuso,* for the Commonwealth.
*William K. Sayer,* for defendant.

CHESLOCK, *J.,* May 23, 2003—The charges against defendant Eric Gadsden stem from the June 2, 2002 shooting of his common-law wife Sharon Smith and her brother Leroy Smith in the Pocono Country Place Development in Monroe County, Pennsylvania. This case was scheduled to go to trial during the May 2003 criminal trial term, but was continued pending the resolution of a motion in limine filed by the Commonwealth on May 6, 2003. Both the Commonwealth and the defendant filed supporting memoranda of law. Oral argument was heard before this court on May 16, 2003. We are

now ready to dispose of the Commonwealth's motion in limine.

The Commonwealth's motion in limine seeks to bar expert reports and expert testimony relating to the psychiatric and psychological examinations of defendant as pertaining to a proffered defense of diminished capacity and/or voluntary intoxication. Under Pennsylvania law, the admission or exclusion of evidence is a matter within the sound discretion of the trial court, which may only be reversed upon a showing of a manifest abuse of discretion. See *Johnson v. Hyundai Motor America,* 698 A.2d 631, 636 (Pa. Super. 1997). Evidence must be relevant to be admissible. Pa.R.E. 402. Additionally, relevant evidence which is prejudicial, misleading, or merely cumulative may be excluded by the trial court. See generally, Pa.R.E. 403; *Yacoub v. Lehigh Valley Medical Associates P.C.,* 805 A.2d 579 (Pa. Super. 2002).

The motion in limine has two counts, the first asking the court to exclude from evidence any and all expert testimony touching upon defendant's alleged diminished capacity and/or voluntary intoxication on relevance, and the second asking the court to exclude from evidence any and all expert testimony touching upon defendant's alleged diminished capacity as speculation. Each count will be discussed in turn. The central thrust of the Commonwealth's first count is that defendant's defense of diminished capacity and/or voluntary intoxication is irrelevant to the charge of attempted murder because its use is barred by precedent. Commonwealth argues that the cases of *Commonwealth v. Terry,* 513 Pa. 381, 393, 521 A.2d 398, 405 (1987); *Commonwealth v. Garcia,*

505 Pa. 304, 309, 479 A.2d 473, 477 (1984); and *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976), all support the proposition that the defense of diminished capacity and/or voluntary intoxication can only be employed to defend against first-degree murder charges. The Pennsylvania Superior Court examined the issue of whether the defense of diminished capacity could be used to negate the specific intent required for other specific intent crimes, such as robbery. See *Commonwealth v. Swartz,* 335 Pa. Super. 457, 484 A.2d 793 (1984). The *Swartz* court determined that the defense of diminished capacity could not be used against charges of specific intent crimes other than first-degree murder, following the dicta of the Pennsylvania Supreme Court in *Garcia.* See *Swartz,* 335 Pa. Super. at 462-63, 484 A.2d at 796. While noting that the legislature has not spoken to date as to whether the defense of diminished capacity could apply to crimes other than first-degree murder, the *Swartz* court agreed with the logic of the apparent policy distinction between first-degree murder and other specific intent crimes. See *id.*

Pennsylvania law defines an attempt as when a person does any act, with intent to commit a specific crime, which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S. §901. Since criminal attempt requires a specific intent to commit a crime, attempted murder is defined as the commission of an act, with intent to kill, which constitutes a substantial step towards the commission of murder. See *Commonwealth v. Griffin,* 310 Pa. Super. 39, 50, 456 A.2d 171, 177 (1983). Furthermore, since the only degree of murder that requires an intent to kill is first-degree murder, at-

tempted murder logically must be attempted murder of the first degree. See *id.* Since second-degree murder and third-degree murders are basically unintentional killings, it would be logically impossible for a person to attempt murder of the second or third degree, since doing so would require the person to *intend* to commit an *unintentional* killing. See *id.* at 50-51, 456 A.2d at 177. (emphasis in original) Therefore, in order to convict a person of attempted murder, an intent to kill must be shown. See *id.* at 52, 456 A.2d at 178.

The Commonwealth notes in its supporting memorandum of law that it is fortunate for the defendant that the intended victims did not die from the shooting, otherwise defendant would be facing two counts of first-degree murder. Com. brief in support at 2. Because defendant is charged with attempted murder, the Commonwealth has to prove beyond a reasonable doubt that the defendant had the intent to kill, just as if he were charged with first-degree murder. While the Commonwealth's position that the defense of diminished capacity cannot be used outside of first-degree murder charges has a basis in the precedent established by the Pennsylvania Supreme and Superior Courts, this court believes that it is a stretch to equate attempted murder and lesser specific intent crimes, such as robbery, in order to prohibit the use of the diminished capacity defense. To say that but for the defendant's less-than-accurate shots, or the speed of the paramedics, or the skill of modern medicine, he would be able to take advantage of the diminished capacity defense is too arbitrary a distinction to be drawn. Attempted murder is near enough in intent to first-degree murder so as to be within the penumbra of first-

degree murder. In the unpublished Superior Court opinion of *Commonwealth v. Hayes,* no. 02888 Philadelphia, 1985 (Pa. Super. Oct. 10, 1985), the *Hayes* court found that the instructions given by the trial court to the jury on the matter of attempted murder were correct in instructing the jury that evidence of the defendant's intoxication could be used for the limited purpose of negating his specific intent to kill his victim. Slip op. at 3. The *Hayes* court further found that the trial court's instruction that intoxication evidence could not be used as a defense to any of the other crimes with which he was charged was a correct interpretation of 18 Pa.C.S. §308.[1] Slip op. at 4. While this court fully recognizes the fact that unpublished opinions are not mandatory authority which this court must follow, they are persuasive authority which we can use to guide our decision. Therefore, it would be proper for this court to deny the first count of the Commonwealth's motion in limine and allow the defendant to present evidence and expert testimony touching upon defendant's alleged diminished capacity and/or voluntary intoxication as a defense to the charge of attempted murder.

The Commonwealth's second count asks the court to exclude from evidence any and all expert testimony touching upon defendant's alleged diminished capacity as speculation. The Commonwealth points to the case of

1. 18 Pa.C.S. §308 provides as follows:

"Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negate the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder."

*Commonwealth v. Legg* for the proposition that the diminished capacity defense is extremely limited, and can only be used if there are mental disorders present that affect the cognitive functions of deliberation and premeditation necessary to form a specific intent to commit an act. 551 Pa. 437, 444, 711 A.2d 430, 433 (1998). In the *Legg* case, the defendant was diagnosed as suffering from major depression, a fact which the PCRA court found to be of arguable merit as to proof of diminished capacity. See *id.* In the case at bar, the defendant has been diagnosed with "a major depressive disorder" which allegedly caused him to have impaired judgment at the time of the shooting, allegedly preventing him from forming an intent to kill his wife or his brother-in-law. See report of Dr. Fischbein, January 13, 2003, p. 8. Since the expert reports produced suggest that defendant was suffering from depression, a condition acknowledged by the *Legg* court to meet the threshold for diminished capacity, it would be proper for this court to deny the second count of the Commonwealth's motion in limine, and allow evidence of the defendant's alleged diminished capacity to be presented at trial.

Due to the aforementioned, we enter the following order:

## ORDER

And now, May 23, 2003, after review and consideration, the Commonwealth's motion in limine is *denied*. In the event the Commonwealth engages an expert(s), a written report shall be furnished to defense counsel at least five days prior to the start of the July 2003 criminal term.